1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BELINDA M. TRAVIS, | ) | 1: 03-CV-5800-SMS |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S MOTION |
| v. | ) | FOR SUMMARY JUDGMENT (DOC. 22) |
| | ) | |
| JOHN E. POTTER POSTMASTER | ) | ORDER DIRECTING THE CLERK TO |
| GENERAL, | ) | ENTER JUDGMENT FOR DEFENDANT AND |
| | ) | AGAINST PLAINTIFF |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff is proceeding with a civil action in this Court. The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and the case has been assigned to the Magistrate Judge to conduct all further proceedings, including trial and the entry of a final judgment.

I. <u>Background</u>

Plaintiff's first amended complaint was filed on January 5, 2004. Plaintiff alleged that she, a Black African-American, had suffered employment discrimination because of race, age, sex, national origin, disability, reprisal for "prior EEO activity," and violation of 29 C.F.R. §§ 1614.101 and 1614.203. She alleged that after she suffered a condition of her back that was a handicap, Plant Manager Kenneth M. Fennell refused to provide

1

work for Plaintiff since June 25, 1995, despite her being able to do work; she was singled out, required to leave the post office, and was charged as being absent without leave. She further alleged that Defendant followed a policy and practice of discriminating against African-Americans on account of their race and of retaliating against complainants in the EEO process, including inflicting reprisals against employees who filed EEO complaints, failing to accommodate employees, refusing to pay EEO complainants for their time, and refusing work to qualified handicapped employees. Finally, she alleged that Defendant wrongfully terminated Plaintiff on or about June 27, 1995, and knowingly permitted repeated harassment of Plaintiff. She sought damages of $300,000.00; reimbursement for lost wages and lost benefits from June 27, 1995; and an immediate return to work.

The complaint was served on Defendant John E. Potter, Defendant Postmaster General, on January 15, 2004.

Defendant answered on April 6, 2004, admitting that it was subject to Title VII of the Civil Rights Act of 1964, and further admitting Plaintiff's status as a former employee of Defendant, Plaintiff's having been given EEO counseling on or about February 18, 1999, and Plaintiff's having been charged with an extended absence or absence without leave in a notice dated July 17, 1996. Defendant further admitted that Plaintiff received an administrative decision from the EEOC, Appeal No. 01A04120, dated on or about March 4, 2003; an EEOC Administrative Judge issued a decision dated February 23, 2000, without a hearing, pursuant to 29 C.F.R. § 1614.109(g); and the EEOC Office of Federal Operations issued a decision affirming Defendant's final decision

1  on or about September 18, 2002. Defendant denied the allegations
2  of discrimination. Defendant asserted affirmative defenses,
3  including Plaintiff's not being a qualified individual with a
4  disability within the meaning of the Rehabilitation Act of 1973;
5  failure to articulate a prima facie case of discrimination;
6  Defendant's actions were taken for legitimate, nondiscriminatory,
7  and non-pretextual reasons; Plaintiff failed to mitigate damages;
8  reduction of damages from other benefits; lack of causation;
9  failure to show a claim for disability harassment exists under
10 the Rehabilitation Act; and failure to exhaust administrative
11 remedies.

12        On July 18, 2005, Defendant filed a motion for summary
13 judgment, or, in the alternative, partial summary judgment,
14 including a memorandum of points and authorities, statement of
15 undisputed material facts in support of the motion, and
16 declarations of Kristi C. Kapetan and Carole A. Hughes with
17 exhibits. Because no opposition was filed, the Court vacated the
18 hearing on the motion and deemed the matter submitted for
19 decision by order dated September 2, 2005. Plaintiff subsequently
20 filed on September 9, 2005, a motion for a hearing on the motion
21 for summary judgment. By order dated September 14, 2005, the
22 Court construed Plaintiff's motion as a request to submit late
23 opposition to the motion for summary judgment and to have a
24 hearing; the Court denied Plaintiff's motion. The Court directed
25 that a collective bargaining agreement that Plaintiff submitted
26 with the request be returned to Plaintiff.

27        II. <u>Undisputed Facts</u>
28        The undisputed facts submitted by Defendant in support of

the motion are as follows:

1. On February 10, 1990, Plaintiff began her employment with the USPS as a mail processor. (Exhibit 6 to Deposition of Belinda Travis, ("Travis Depo."), 63:23-64:12.)

2. Plaintiff was apparently injured and went out on leave on June 27, 1995. (Exhibit 8 to Travis Depo., 66:7-67:4.)

3. On March 21, 1996, the USPS sent Ms. Travis an extended absence letter instructing her to submit medical documentation no later than April 12, 1996, to substantiate her absence. (Travis Depo., 66:14-67:4.)

4. On July 17, 1996, Defendant issued Plaintiff a "Notice of Removal" indicating that Plaintiff would be terminated from the USPS for failure to follow instructions and extended absence. (Exhibit 8 to Travis Depo., 66:7-67:4.)

5. Plaintiff filed a grievance against this letter, which the USPS denied on November 8, 1996, for Plaintiff's failure to follow the instructions in the notice of removal. (Exhibit 9 to Travis Depo., 68:18-69:3.)

6. The matter was submitted to arbitration, and in the arbitration award dated September 9, 1998, Plaintiff was required to go to a fitness for duty exam and "[if] the grievant is not found fit for duty, ... the removal is upheld." (Exhibit 10 to Travis Depo., 69:11-70:23.)

7. The arbitrator who issued this award is an African-American woman. (Travis Depo., 62:2-8.)

8. Plaintiff did not appeal the September 9, 1998 arbitration award. (Travis Depo., 70:12-23.)

9. On November 11, 1998, Plaintiff underwent a fitness for

4

1  duty examination. In the Fitness for Duty Report, Dr. Huene
2  stated that Plaintiff should not do any heavy lifting. Dr. Huene
3  further states, "Certainly, there is no objective limitation of
4  any significant abnormality." (Ex. 12 to Travis Depo.,
5  71:24-72:6.)

6      10. Plaintiff's job position required her to be able to
7  carry up to seventy pounds. (Ex. 6 to Travis Depo., 63:23-64:12.)

8      11. On December 30, 1998, Defendant sent a letter of
9  termination to Plaintiff. (Ex. 14 to Travis Depo., 72:8-16.)

10     12. The arbitrator subsequently found on April 2, 1999, that
11 Plaintiff could "not return... to duty without limitations" and
12 upheld Defendant's removal from employment with the USPS. (Ex. 15
13 to Travis Depo., 73:24-74:5.)

14     13. On March 20, 1999, Plaintiff filed a complaint with the
15 Equal Employment Opportunity Commission ("EEOC"), disputing the
16 termination letter issued to her by USPS on December 30, 1998.
17 (Travis Depo., 75:6-75:16.)

18     14. In a letter dated March 25, 1999, the EEOC accepted for
19 investigation the issue of Plaintiff's termination. (Exhibit 1 to
20 Declaration of Carole A. Hughes.)

21     15. On September 23, 1999, the USPS filed a motion for a
22 conclusion of the case without a hearing. On October 28, 1999,
23 Plaintiff submitted a request for the issue to be heard by an
24 administrative law judge. (Exhibit 18 to Travis Depo.,
25 75:24-76:17.)

26     16. On February 23, 2000, an administrative law judge
27 dismissed the complaint without a hearing, finding no
28 discrimination. The sole issue addressed by the administrative

1  law judge was whether or not Plaintiff was discriminated against
2  in her termination from service with USPS. (Exhibit 2 to
3  Declaration of Carole A. Hughes.)

4      17. Plaintiff appealed the decision of February 23, 2000,
5  and the decision was upheld both initially and upon
6  reconsideration. (Exs. 18, 20 and 22 to Travis Depo.,
7  75:24-76:17; 77:15-78:24.)

8      18. Prior to the EEOC complaint which led to this
9  litigation, Plaintiff filed and settled a complaint of race
10 discrimination regarding supervisory conduct prior to her
11 termination. Plaintiff did not appeal or exhaust the
12 administrative remedies available to her after the settlement of
13 said complaint. (Travis Depo., 32:1-10; 33:14-15.)

14     19. Plaintiff submitted a second Fitness for Duty Report
15 issued by Dr. Huene on July 8, 1999, stating that Plaintiff is
16 "released to return to work activities without restrictions." The
17 work activities referred to are those required for a "mark up
18 clerk, automated, Level IV." (Ex. 18 to Travis Depo.)

19     20. Plaintiff testified that she could walk long enough to
20 go grocery shopping for forty-five minutes, stand in one place
21 for fifteen minutes, twist her back carefully, and lift her
22 granddaughter, who weighs about twenty pounds. (Travis Depo.,
23 55:7-58:13.)

24     21. Plaintiff names similarly situated individuals outside
25 of her protected gender class that were treated more favorably
26 without providing any specifics regarding the circumstances of
27 employment of those named; she does not have any personal
28 knowledge of those named. (Exs. 3 & 4 to Travis Depo., Travis

1 Depo., 43:10-58:8.)

2     22. Plaintiff cannot provide names or ages of individuals

3 she alleges to be younger than she and treated more favorably

4 than she while working at the post office. (Travis Depo.,

5 48:5-8.)

6     23. Plaintiff provides a general statement of individuals of

7 other races experiencing favorable employment treatment, but does

8 not provide names or specific circumstances of that treatment.

9 (Exs. 3 & 4 to Travis Depo., Travis Depo., 43:10-58:8.)

10     24.[1] There were no statements, references, comments, or other

11 verbal utterances indicating Plaintiff was being discriminated

12 against on the basis of her age, sex, or race.

13 (Travis Depo., 48:16-50:8, Exs. 3 & 4.)

14     III. <u>Summary Judgment</u>

15     Summary judgment is appropriate when it is demonstrated that

16 there exists no genuine issue as to any material fact, and that

17 the moving party is entitled to judgment as a matter of law.

18 Fed. R. Civ. P. 56(c). Under summary judgment practice, the

19 moving party

20         [A]lways bears the initial responsibility of
        informing the district court of the basis for

21         its motion, and identifying those portions of
        "the pleadings, depositions, answers to

22         interrogatories, and admissions on file,
        together with the affidavits, if any," which

23         it believes demonstrate the absence of a
        genuine issue of material fact.

24
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). It is the

25 moving party's burden to establish that there exists no genuine

26

27

28     [1] This fact is misnumbered as 26 on Defendant's separate statement of
undisputed material facts.

1  issue of material fact and that the moving party is entitled to
2  judgment as a matter of law. British Airways Board v. Boeing Co.,
3  585 F.2d 946, 951 (9ᵗʰ Cir. 1978).

4      Where a party with the ultimate burden of persuasion at
5  trial as to a matter moves for summary judgment, it must
6  demonstrate affirmatively by evidence each essential element of
7  its claim or affirmative defense and must establish that there is
8  no triable issue of fact as to each essential element such that a
9  rational trier of fact could render a judgment in its favor.
10  Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885,
11  888 (9ᵗʰ Cir. 2003). If a party moves for summary judgment with
12  respect to a matter as to which the opposing party has the
13  ultimate burden of persuasion at trial, then the moving party
14  must show that the opposing party cannot meet its burden of proof
15  at trial by establishing that there is no genuine issue of
16  material fact as to an essential element of the opposing party's
17  claim or defense; the moving party must meet the initial burden
18  of producing evidence or showing an absence of evidence as well
19  as the ultimate burden of persuasion. Nissan Fire Ltd. v. Fritz
20  Cos., Inc., 210 F.3d 1099, 1102 (9ᵗʰ Cir. 2000). In order to carry
21  its burden of production, the moving party must either produce
22  evidence negating an essential element of the opposing party's
23  claim or defense or show that the nonmoving party does not have
24  enough evidence of an essential element to carry its ultimate
25  burden of persuasion at trial. Id. (citing High Tech Gays v.
26  Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.
27  1990)). In order to carry its ultimate burden of persuasion on
28  the motion, the moving party must persuade the court that there

is no genuine issue of material fact. <u>Id.</u>

However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact

that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

The Court is not obligated to consider matters that are in the record but are not specifically brought to its attention; the parties must designate and refer to specific triable facts. Even in the absence of a local rule, for evidence to be considered, the party seeking to rely on it must specify the fact by indicating what the evidence is or says and must indicate where it is located in the file. Although the Court has discretion in appropriate circumstances to consider other material, it has no duty to search the record for evidence establishing a material fact. <u>Carmen v. San Francisco United School Dist.</u>, 237 F.3d 1026, 1029 (9th Cir. 2001).

A party moving for summary judgment is entitled to the benefit of any relevant presumptions that support the motion provided that the facts giving rise to the presumption are undisputed. <u>Coca-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250, 1254 (9th Cir. 1982).

IV. <u>Scope of the Present Action</u>

In the first amended complaint, Plaintiff alleges acts of discrimination by Defendant other than Defendant's terminating Plaintiff's employment, including refusing to provide work for Plaintiff since June 25, 1995, singling out Plaintiff, requiring

her to leave the post office, and charging her as being absent without leave. She further alleged that Defendant followed a policy and practice of discriminating against African-Americans on account of their race and of retaliating against complainants in the EEO process, including inflicting reprisals against employees who filed EEO complaints, failing to accommodate employees, refusing to pay EEO complainants for their time, and refusing work to qualified handicapped employees.

The claim filed by Plaintiff with the EEOC is not in the record. However, the EEO's own descriptions of the issues presented, and its recital of the scope of the investigation of Plaintiff's discrimination complaint made to the EEO, indicate that the only issue was whether Defendant's terminating Plaintiff by way of the letter dated December 30, 1998, was discriminatory with respect to race, color, religion, sex, national origin, age, disability, and retaliation (prior EEO activity). (Hughes Decl., Ex. 1; Travis Depo., Ex. 22.) There is no evidence that Plaintiff disagreed with the defined issues, objected, or otherwise sought to expand the scope of the EEO proceeding.

Generally, before filing suit on a statutory employment discrimination claim, the aggrieved employee must have exhausted the employee's administrative remedy by filing a timely and sufficient charge with the appropriate administrative agency and obtained a "right to sue" letter. 42 U.S.C. § 2000e-5(b), (f)(3). The filing of a sufficient administrative claim that includes the matters forming the basis of a later judicial claim, and the receipt of a right-to-sue letter, have been referred to as jurisdictional pre-requisites to maintaining a Title VII action.

11

1 <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 798 (1973)

2 (filing charges with the EEOC and receiving notice of the right

3 to sue are jurisdictional prerequisites to filing a suit in

4 federal court); <u>B.K.B. v. Maui Police Dept.</u>, 276 F.3d 1091, 1099

5 (9th Cir. 2002). The purpose of the requirement of administrative

6 exhaustion is to give the charged party notice of the claim and

7 to permit investigation and conciliation by the administrative

8 agency, as well as to narrow the issues for prompt adjudication

9 and decision. <u>Id.</u>

10     A judicial complaint may encompass any discrimination like

11 or reasonably related to the allegations of the EEOC charge.

12 <u>Freeman v. Oakland Unified School District</u>, 291 F.3d 632, 636 (9th

13 Cir. 2002) (quoting <u>Oubichon v. North Am. Rockwell Corp.</u>, 482

14 F.2d 569, 571 (9th Cir. 1973)). A district court's jurisdiction

15 extends to all allegations of discrimination that either fell

16 within the scope of the EEOC's actual investigation or an EEOC

17 investigation that can reasonably be expected to grow out of the

18 charge of discrimination. <u>Freeman</u>, 291 F.3d at 636. A district

19 court must inquire whether the original EEOC investigation would

20 have encompassed the additional charges made in the court

21 complaint but not included in the EEOC charge itself. <u>Id.</u> The

22 language of EEOC charges must be liberally construed because the

23 charges are often made by lay people who are not expert in the

24 technicalities of formal pleading; the crucial element of the

25 charge is the factual statement. <u>B.K.B.</u>, 276 F.3d at 1100.

26 Allegations of discrimination not included in the administrative

27 charge may not be considered by a district court unless the new

28 claims are like or reasonably related to the allegations

contained in the EEOC charge. Id. Factors appropriately considered are the alleged basis of the discrimination, dates of the discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, locations at which discrimination is alleged to have occurred, and the extent to which the judicial claims are consistent with the Plaintiff's original theory of the case. Id.

With respect to the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), EEOC enforcement processes are generally applicable. 29 U.S.C. § 794a(a); 29 U.S.C. § 633a(b)[2] and (c). A plaintiff under the Rehabilitation Act must exhaust administrative remedies as a prerequisite to filing a judicial action, and the judicial action is limited to claims raised in the administrative proceeding and those reasonably related thereto. Brown v. General Services Administration, 425 U.S. 820, 832 (1976); Leong v. Potter, 347 F.3d 1117, 1121-22 (9th Cir. 2003); Boyd v. United States Postal Service, 752 F.2d 410, 413-14 (9th Cir. 1985). An ADEA plaintiff must exhaust administrative remedies with the EEOC as a prerequisite to filing a judicial action, and the judicial action is limited to claims which have been raised in the EEOC charge unless they are reasonably related to the allegations of the charge. 29 U.S.C. § 626(c), (d); Albano v. Schering-Plough Corp., 912 F.2d 384, 386 (9th Cir. 1990).

Here, the dates of the additional discriminatory acts alleged by Plaintiff in her judicial complaint necessarily

---

[2] The postal service is an employer subject to the ADEA with respect to personnel actions affecting employees who are at least forty years of age. 29 U.S.C. § 633a(a).

preceded the time of the discharge. The Defendant's conduct
mainly had to do with distribution of work and discipline; they
were not related to the sole issue remaining after the
arbitration, namely, the result of Plaintiff's fitness for duty
examination, and Defendant's conduct undertaken with respect to
Plaintiff thereafter. Plaintiff's broader allegations of a
generalized policy and practice of harassment, racial
discrimination, and retaliation against complainants in the EEO
process were not necessarily inconsistent with the theory of the
complaint, but they were likewise unlike the conduct involved in
Plaintiff's termination; because of their scope, they appear
necessarily to have involved more persons and other periods of
time. A reasonable investigation of Plaintiff's administrative
complaint of discriminatory discharge would have focused on the
reason for Plaintiff's discharge, the results of the fitness for
duty examination, and the physical requirements of Plaintiff's
work. Although the theory of discrimination in discharge was
compatible with that underlying the additional discriminatory
acts, there does not appear to be a reasonable relationship
between the charged conduct and the additional conduct complained
of in this action. See Aramburu v. The Boeing Co., 112 F.3d 1398,
1409-10 (10th Cir. 1997) (holding that where the administrative
charge was for discriminatory discharge based on Mexican-American
ancestry, and it involved allegedly unfair application of
attendance policy, Plaintiff did not exhaust his claim of hostile
work environment on the basis of Mexican ancestry which related
to harassment and being required to work beyond medical
restrictions because such claim was not reasonably related to the

14

administrative claim); <u>Tart v. Hill Behan Lumber Co.</u>, 31 F.3d
668, 673 (8th Cir. 1994) (holding that filing a charge of
discriminatory discharge based on race did not exhaust a claim of
racial harassment in the workplace in a case involving state law
governed by Title VII standards).

It is true that in some sense the Plaintiff's absence, the
availability of work, and the earlier treatment of Plaintiff may
have played some part in Plaintiff's termination. However, the
presence of some relatively distant, logical relationship between
Defendant's earlier treatment of Plaintiff on the job and the
ultimate decision to terminate Plaintiff based on her physical
condition is something different from, and significantly less
than, a reasonable relationship such that Plaintiff's generalized
claims of discrimination and retaliation would be included in an
EEOC investigation of discharge based on the arbitration and
award and the Plaintiff's fitness for duty. To conclude otherwise
would do violence to the policies underlying the requirement of
exhaustion of administrative remedies.

V. <u>Disparate Treatment under Title VII</u>

Title 42 U.S.C. § 2000e(2)(a)(1) and (2) provides in
pertinent part that it is an unlawful employment practice for an
employer to fail or refuse to hire or to discharge any
individual, or otherwise to discriminate against any individual
with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's race,
color, religion, sex, or national origin; or to limit, segregate,
or classify employees or applicants for employment in any way
which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Proof of discrimination requires proof that an adverse employment action was suffered because of the protected characteristic. This may be proved by a theory of disparate treatment, disparate impact, or failure to accommodate where there is a duty to do so.

A plaintiff in a suit for discriminatory treatment pursuant to Title VII of the Civil Rights Act of 1964 must prove that there has been intentional discrimination on prohibited grounds, that is, that similarly situated individuals were treated differently because of a protected characteristic, International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977); discriminatory motive must be proved, id., and it must be shown that it was the determinative factor or influence in the adverse employment action, Hazen Paper Co. v.Biggins, 507 U.S. 604, 610 (1993).

A plaintiff must carry the initial burden to establish a prima facie case of racial discrimination. Thereafter, the employer has the burden of proof to articulate a legitimate, nondiscriminatory reason for the challenged action. The plaintiff must then show by a preponderance that the employer's stated reason for the action was in fact mere pretext. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-806 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In order to demonstrate a prima facie case, a plaintiff must

16

1 offer evidence that gives rise to an inference of unlawful
2 discrimination. <u>Burdine</u>, 450 U.S. at 253-54. A plaintiff may
3 accomplish this by introducing direct evidence of discriminatory
4 intent (i.e., evidence which, if believed, proves the fact [here
5 discriminatory animus] without inference or presumption, <u>Godwin</u>
6 <u>v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998); by
7 introducing evidence that suggests that the employment decision
8 was based on an illegal discriminatory criterion; or by using
9 factors such as those set forth in <u>McDonnell Douglas</u> at 802
10 (there, showing membership in a protected class, qualification
11 for a position, rejections despite qualifications, and the
12 employer's continuing to seek applicants). <u>Cordova v. State Farm</u>
13 <u>Ins. Companies</u>, 124 F.3d 1145, 1148-49 (9th Cir. 1997).

14     Because the ultimate burden of persuading the trier of fact
15 that the defendant intentionally discriminated against the
16 plaintiff remains at all times with the plaintiff, the burden of
17 persuasion never shifts; rather, a defendant's burden is to rebut
18 the presumption of discrimination by producing evidence that the
19 reason for the challenged action was legitimate and
20 nondiscriminatory. The defendant need not persuade the Court that
21 it was actually motivated by the proffered reasons; it is
22 sufficient that the defendant's evidence raises a genuine issue
23 of fact as to whether it discriminated against the plaintiff.
24 <u>Burdine</u>, 450 U.S. at 254-55. This requirement is met if the
25 defendant clearly sets forth through admissible evidence the
26 reasons for the challenged action that are legally sufficient to
27 justify a judgment for the defendant. <u>Id.</u> at 255. Once this
28 burden of production is met, the presumption raised by the prima

1  facie case is rebutted, and it disappears. Id.

2      The plaintiff's burden at this point is to persuade the
3  Court that the plaintiff has been the victim of intentional
4  discrimination, which may be accomplished either 1) directly by
5  persuading the Court that a discriminatory reason more likely
6  motivated the employer, or 2) indirectly by showing that the
7  employer's proffered explanation is unworthy of credence.
8  Burdine, 450 U.S. at 256.

9      Here, Plaintiff did show that she was a member of protected
10 classes (race, color, sex, national origin) and suffered an
11 adverse employment action.

12     As to Plaintiff's qualifications for her position,
13 Plaintiff's complaint was unverified, so it cannot constitute
14 evidentiary material in the usual sense. Plaintiff has not
15 submitted direct evidence warranting a conclusion that she
16 successfully performed her job at the time of termination.
17 However, she did submit evidence from which an inference may be
18 drawn that Plaintiff was qualified to perform her job.

19     Exhibit 6 to Plaintiff's deposition is a form regarding the
20 medical examination and assessment completed on or about February
21 1, 1990, near the time of Defendant's hiring of Plaintiff. The
22 pre-employment portion of the form states that it embodies
23 information to be used to determine fitness for duty. With
24 respect to the functional requirements of Plaintiff's position as
25 a mail processor, it indicates that an essential factor of her
26 duty was to perform "Heavy lifting, up to 70 pounds."[3] Another

27 ────────────────

28     [3] Moderate lifting was defined as lifting of fifteen to forty-four pounds, and light lifting under fifteen
   pounds.

1  essential requirement was "Heavy carrying UP TO 70 Lbs." (Decl.

2  of Kapetan, Ex. 1, Travis Depo. at 63-64, Ex. 6.) Dr. Huene's

3  evaluation of November 11, 1998, which precipitated Plaintiff's

4  dismissal, was that Plaintiff had a normal range of motion of the

5  cervical spine, shoulder, elbow, forearm, wrist, and hand;

6  comparable grasping power with slight tenderness over the left

7  lateral epicondyle that increased with gripping and grasping; and

8  normal range of motion of the lumbar spine, hip, knee, ankle, and

9  foot. The neurological exam in the upper and lower extremities

10 was negative; reflexes were intact; and there was no evidence of

11 any motor loss or sensory deficit. (Id. at p. 3.) The diagnostic

12 impression was lateral epicondylitis, left elbow; chronic low

13 back pain without objective findings; and no objective findings

14 in the region of the left arm, wrist, hand, foot, or right

15 shoulder. Any permanent residuals were subjective in nature and

16 slight such that they would not interfere with any work

17 activities. He found no specific objective factors of any

18 abnormality aside from scoliosis, which would not interfere with

19 any activity. Although there was tenderness to palpation in the

20 lumbosacral area, there were no significant findings that would

21 be compatible with a lumbar disc problem. The only work

22 preclusion was, "I would recommend that she not do any very heavy

23 lifting." (Decl. of Kapetan, Ex. 1, Travis Depo. at 72, Ex. 14,

24 Letter from Huene.)

25     The Court is faced with a discrepancy, in that Plaintiff's

26 position appeared to require "heavy" lifting, whereas Plaintiff's

27 fitness for duty exam precluded only "very heavy" lifting. It is

28 possible that Dr. Huene's preclusion covered lifting of seventy

1  pounds or less; however, it is also possible that "very heavy"
2  lifting was lifting in excess of the heavy lifting requirement of
3  seventy pounds, and that therefore Dr. Huene's evaluation did not
4  preclude Plaintiff from performing her position. This Court is
5  required to draw in favor of Plaintiff, the non-moving party, all
6  favorable inferences from the evidence.

7       Plaintiff testified at deposition that she tried not to bend
8  or stoop and instead would get on her knees or use her feet, she
9  was very careful about her back in lifting, she knew she could
10 lift twenty pounds for a short period of time, and she would try
11 but was not sure if she could lift anything much over twenty
12 pounds. (Decl. Kapetan, Ex. 1, Travis Depo. at 55-58.) However,
13 this testimony apparently described Plaintiff's condition at the
14 time of her deposition, and it was not inconsistent with her
15 position's requirements of intermittent bending; further, because
16 of Plaintiff's uncertainty in her testimony, it was not even
17 necessarily inconsistent with the requirement of heavy lifting
18 and carrying. (Id., Ex. 1, Ex. 6 to Travis Depo.)

19      Accordingly, the Court concludes that Plaintiff has
20 submitted evidence that warrants an inference that she was
21 capable of performing, or qualified to perform, her position at
22 the time of termination.

23      However, Plaintiff failed to show that Plaintiff's position
24 remained open and was ultimately filled by a person not a member
25 of the protected class. See, St. Mary's Honor Center v. Hicks,
26 509 U.S. 502, 506 (1993). In this regard, she has failed to
27 produce evidence warranting an inference of discriminatory intent
28 as the determinative factor in her discharge.

With respect to discriminatory animus based on gender, Plaintiff's testimony at deposition that similarly situated individuals who were not female were treated more favorably does not suffice to suggest animus because Plaintiff has not submitted evidence to establish that the individuals were similarly situated with respect to the significant circumstances. (Id., Ex. 1 at 47-48.) It has been recognized that evidence of treatment of others in comparable circumstances may be probative of motive. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973). However, the proponent of comparative evidence has the burden of establishing that the circumstances and actions in question are sufficiently comparable to warrant the inference in question. See Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992) (imposing on the plaintiff the obligation to establish that for the same or similar conduct in all pertinent respects he was treated differently from similarly-situated non-minority employees); Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004) (requiring the proponent of evidence that other employees, who were not in the protected class, were treated better, to establish that they were similarly situated, including showing that the individuals had dealt with the same supervisor, had been subject to the same standards, and had engaged in the same conduct without any mitigating or distinguishing circumstances, and determining that a mere opinion that other employees were not treated similarly was insufficient and amounted to no more than speculation, conjecture, or fantasy).

Plaintiff gave workers' names but did not know the employees

or their age, race, or disability; Plaintiff was just given the
names by the union. Plaintiff's responses to interrogatories
naming male employees who were allowed to work and for whom
accommodations were made, (id., Ex. 4 at 2), also suffered from a
lack of detail that would warrant an inference of animus.

Plaintiff testified that there were no verbal utterances by
agents of Defendant that supported her gender discrimination
claim. (Kapetan Decl., Ex. 1 at 48-49.)

The Court concludes that Plaintiff has not submitted
evidence warranting an inference of discriminatory animus based
on gender.

With respect to racially discriminatory animus, the Court
finds similarly insufficient Plaintiff's statement under oath in
her responses to the first set of interrogatories that employees
of the postal service of other races were allowed to work, and
accommodations were made for their conditions. (Kapetan Decl.,
Ex. 1, Travis Depo., Exs. 3 and 4.)

Here, there is an absence of evidence as to the pertinent
circumstances of actions undertaken with other employees, such as
the standards applied, the similarity of the circumstances, or
the presence of any mitigating or distinguishing circumstances.
Although Plaintiff testified that health and safety employee
Pauline, who was Mexican, was given accommodations, Plaintiff did
not know the nature of her condition, her restrictions, or the
accommodation. (Travis Depo. at 45-46.) Plaintiff was told by the
union people that some disabled people had been given
accommodations by the postal service, but she did not personally
know the employees, their names, or the nature of their injuries.

(Id. at 46-47.) The mere statement that accommodations were made for others who were allowed to work, without evidence of the circumstances, does not warrant an inference of racially discriminatory animus.

Plaintiff testified that there were no verbal utterances by agents of Defendant that would support her claim of racial discrimination. (Kapetan Decl., Ex. 1 at 48-50.)

The fact that Plaintiff previously complained that she had suffered race discrimination by another supervisor, Malanie, at some previous time (Kapetan Decl., Ex. 1, pp. 32-33) does not support an inference of racial discrimination because the evidence does not disclose any relationship between the two events, whether it be based on time, similar circumstances, or otherwise, that would warrant an inference of animus. Cf., Cordova v. State Farm Ins. Companies, 124 F.3d 1145, 1149 (9th Cir. 1997).

There being no other evidence suggesting that racially discriminatory animus was a factor in Plaintiff's termination, the Court concludes that Plaintiff failed to make a prima facie case of racial discrimination with respect to her termination.

There is no other evidence before the Court suggesting that the reason for Plaintiff's termination was discriminatory, or otherwise indicating that Defendant's actions or the circumstances surrounding them would warrant an inference that discrimination based on gender, race, color, or national origin. Therefore, the Court concludes that Plaintiff failed to make a prima facie case of discrimination on these bases with respect to her termination.

1      VI. <u>Retaliation Claim under Title VII</u>

2      A federal employee has a claim under Title VII for

3  retaliation by the federal government as an employer for prior

4  EEO activity, such as filing an EEO complaint. <u>White v. General

5  Services Administration</u>, 652 F.2d 913, 916-17 (9th Cir. 1981);

6  <u>Ayon v. Sampson</u>, 547 F.2d 446, 449-50 (9th Cir. 1976). An

7  employer undertaking an adverse employment action can violate the

8  anti-retaliation provisions of Title VII in either of two ways:

9  1) if the adverse employment action occurs because of the

10 employee's opposition to conduct made an unlawful employment

11 practice by the statute, or 2) if it is in retaliation for the

12 employee's participation in the machinery set up by Title VII to

13 enforce its provisions. <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 680

14 (9th Cir. 1997).

15     To establish a prima facie case of retaliation, a plaintiff

16 must establish that 1) the plaintiff engaged in a protected

17 activity, 2) the plaintiff suffered an adverse employment action;

18 and 3) there was a causal connection between the activity and the

19 employment decision. <u>Vasquez v. County of Los Angeles</u>, 349 F.3d

20 634, 646 (9th Cir. 2003). Initiating contact with an EEO counselor

21 constitutes a protected activity. <u>Hashimoto v. Dalton</u>, 118 F.3d

22 671, 680 (9th Cir. 1997). Termination is an adverse employment

23 action. <u>Thomas v. City of Beaverton</u>, 379 F.3d 802, 811 (9th Cir.

24 2004).

25     The FAC refers to reprisal for prior EEO activity, but the

26 nature of this is not specified. There is a further reference to

27 a pattern and practice of retaliating against complainants in the

28 EEO process, including inflicting reprisals against employees who

24

1 filed EEO, failing to accommodate employees, refusing to pay EEO

2 complainants for their time, and refusing work to qualified

3 handicapped employees. However, as previously analyzed, there was

4 no mention of this broader pattern or practice in the

5 administrative charge, and it was not reasonably related to the

6 charge or an investigation thereof. Thus, the analysis will cover

7 the allegation of reprisal for prior EEO activity in connection

8 with Plaintiff's termination.

9     The evidence reveals that prior to the EEOC complaint which

10 led to this litigation, Plaintiff filed and settled a complaint

11 of race discrimination regarding supervisory conduct prior to her

12 termination, and Plaintiff did not appeal or exhaust the

13 administrative remedies available to her after the settlement of

14 the complaint. (Travis Depo. at 32-33.) With respect to the

15 substance of the complaint, Plaintiff testified that she was

16 always sweeping, but there was a rule that a worker was supposed

17 to sweep and feed; further, she felt that Malanie, a supervisor,

18 would not allow her to take a break with co-workers because of

19 her race. Plaintiff talked to Manny Fernando, an EEO advisor, who

20 facilitated a settlement pursuant to which Plaintiff dropped her

21 claim, and the supervisor agreed to stop the offending practices.

22 Plaintiff did not recall when she filed the complaint regarding

23 the prior incident. The Court has not been directed to evidence

24 of the timing of the incident or the EEO process relating to it.

25 (Id.)

26     Temporal proximity or other circumstances may warrant an

27 inference of retaliatory motive. Porter v. California Department

28 of Corrections, 419 F.3d 885, 895 (9th Cir. 2005). Here, there are

no circumstances in evidence that would tend to establish a
causal connection between the protected activity and the
termination.

Accordingly, the Court concludes that Plaintiff has not
demonstrated a prima facie case of retaliation for protected
activities under Title VII.

VII. <u>Discrimination under the ADEA</u>

Under the Age Discrimination in Employment Act, 29 U.S.C. §
633a(b) and (c), personnel actions shall be made free from any
discrimination based on age. Under the ADEA, it is unlawful for
an employer to fail or refuse to hire or to discharge any
individual, or otherwise to discriminate against any individual
with respect to his compensation, terms, conditions, or
privileges of employment because of such individual's age, or to
limit or classify employees in any way that would tend to deprive
any individual of employment opportunities or otherwise adversely
affect his status as an employee because of age. 29 U.S.C. §
623(a). In litigating under the ADEA, a plaintiff is met with the
same requirements for a prima facie case. <u>O'Connor v.</u>
<u>Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 309 (1996)
(assuming the <u>McDonnell-Douglas</u> framework applied to ADEA cases);
<u>Enlow v. Salem-Keiser Yellow Cab. Co., Inc.</u>, 389 F.3d 802, 811-12
(9th Cir. 2004) (stating applicability in ADEA cases involving
circumstantial evidence).

Here, Plaintiff's evidence of discriminatory animus based on
age was insufficient to raise an inference of discrimination.
Plaintiff declared in answers to interrogatories and in her
deposition testimony that younger employees with disabilities

1  were allowed to work with accommodations for their condition such
2  as light-duty positions, but she did not know their names or
3  their ages; she was just assuming they were younger than she.
4  (Kapetan Decl., Ex. 1 at 44-45, Ex. 4 to Travis Depo at 1.) She
5  gave no information as to the nature of their conditions or the
6  accommodations in question. Under the circumstances, there is
7  insufficient data regarding similarity of the situations to
8  warrant an inference of discrimination based on age.

9      VIII. <u>Rehabilitation Act</u>

10     The Rehabilitation Act provides that no otherwise qualified
11 individual with a disability in the United States shall solely by
12 reason of her or his disability be excluded from the
13 participation in, be denied the benefits of, or be subjected to
14 discrimination under various programs or activities that receive
15 federal assistance or are conducted by an executive agency, and
16 specifically the United States Postal Service. 29 U.S.C. §
17 794(a). With respect to claims of discrimination by a federal
18 employee, the remedies, procedures, and rights set forth in Title
19 VII of the Civil Rights Act of 1964 are applicable. 29 U.S.C. §
20 794a. This remedy is exclusive and requires exhaustion of
21 administrative remedies. <u>Boyd v. United States Postal Service</u>,
22 752 F.2d 410, 413 (9th Cir. 1985).

23     With respect to the Rehabilitation Act, Plaintiff is met
24 with the requirement of stating a prima facie case. <u>Douglas v.</u>
25 <u>Anderson</u>, 656 F.2d 528, 530-32 (9th Cir. 1981) (applying the
26 <u>McDonnell Douglas</u> burden-shifting framework to a Rehabilitation
27 Act claim). Plaintiff must show that 1) Plaintiff had a
28 disability covered by the act; 2) Plaintiff was otherwise

1  qualified for the position; 3) Plaintiff worked for a covered
2  entity; and 4) the employer took adverse action against the
3  plaintiff solely because of a disability. Lucero v. Hart, 915
4  F.2d 1367, 1371 (9th Cir. 1990). If the plaintiff makes out a
5  prima facie case of wrongful termination, the burden shifts to
6  the defendant to demonstrate a legitimate, nondiscriminatory
7  reason for the termination. Id. Summary judgment for a defendant
8  is still proper if the defendants can rebut any prima facie case
9  with evidence of a nondiscriminatory reason for the termination.
10 Id.

11     As to Plaintiff's disability, Plaintiff must prove that she
12 is a qualified individual with a disability. The standards used
13 to determine whether an act of discrimination violated the
14 Rehabilitation Act are the same standards applied under the
15 Americans with Disabilities Act ("ADA"). Coons v. Secretary of
16 the United States Department of the Treasury, 383 F.3d 879, 884
17 (9th Cir. 2004). According to the ADA, an individual is disabled
18 if that individual (1) has a physical or mental impairment that
19 substantially limits one or more of the individual's major life
20 activities; (2) has a record of such an impairment; or (3) is
21 regarded as having such an impairment. Id.

22     The evidence indicates that Plaintiff can walk for forty-
23 five minutes, stand for fifteen minutes in one place, and can
24 twist her back and lift about twenty pounds; Plaintiff cannot
25 perform any very heavy lifting, although physical examination
26 revealed that at the time of termination, she suffered no
27 objective limitation of any significant abnormality. She avoided
28 bending, but the extent of her ability to bend is not shown.

1  Although lifting may be considered a major life activity,

2  Plaintiff has not shown a substantial limitation of her lifting

3  ability. Cf. Thompson v. Holy Family Hospital, 121 F.3d 537, 539-

4  40 (9th Cir. 1997) (holding that inability to lift over twenty-

5  five pounds or to perform heavy lifting was not a substantial

6  limitation). As to the life activity of working, as previously

7  discussed, one reasonable inference warranted by the evidence is

8  that Plaintiff could perform her job's lifting requirement;

9  another is that she could not. Even if the only reasonable

10 inference were that Plaintiff could not perform her position,

11 Plaintiff has not produced evidence showing that her condition

12 excludes her from an entire class of jobs, as the Supreme Court

13 has held is required:

14     To be substantially limited in the major life activity
       of working, then, one must be precluded from
15     more than one type of job, a specialized job, or a
       particular job of choice. If jobs utilizing an
16     individual's skills (but perhaps not his or her
       unique talents) are available, one is not precluded
17     from a substantial class of jobs. Similarly, if a
       host of different types of jobs are available, one
18     is not precluded from a broad range of jobs.

19 Sutton v. United air Lines, Inc., 527 U.S. 471, 492 (1999).

20 Plaintiff claimed that she could perform another job in the

21 postal service that involved using a new machine. (Travis Depo.

22 at 50.) Plaintiff has not shown that she had a disability within

23 the meaning of the statute.

24     Based on the state of the evidence, it follows that

25 Plaintiff has not demonstrated that she had a medical record of

26 an impairment that substantially limited a major life activity.

27     Further, there is no evidence that Plaintiff was regarded as

28 having an impairment that substantially limited a major life

29

1  activity. The fact of her termination for lack of fitness for her

2  position warrants an inference that she was regarded as unable to

3  perform her job due to lack of lifting ability, but not that she

4  was suffering from a disability within the meaning of the

5  statute.

6      IX. <u>Plaintiff's Response to the Motion</u>

7      Plaintiff filed a response to Defendant's motion for summary

8  judgment, arguing that her witnesses and evidence had not been

9  heard, and responding to various points. By order dated September

10 14, 2005, the Court denied Plaintiff's request for a hearing and

11 determined that she was not entitled to be heard in opposition to

12 the motion because she had failed to show good cause for her

13 failure to file a timely opposition. Thus, the Court will not

14 consider on the merits materials submitted by Plaintiff in

15 opposition to the motion.

16     X. <u>Disposition</u>

17     In summary, with respect to her discharge, Plaintiff has

18 failed to produce evidence warranting an inference of

19 discriminatory intent on the basis of race, ancestry, sex,

20 national origin, age, or disability. She has also failed to

21 produce evidence warranting an inference of retaliatory

22 discharge. Plaintiff has failed to make a showing sufficient to

23 establish the existence of elements essential to her case and on

24 which she will bear the burden of proof at trial. Defendant is

25 entitled to judgment as a matter of law on Plaintiff's claims.

26     Accordingly, it IS ORDERED that

27     1) Defendant's motion for summary judgment IS GRANTED; and

28     2) The Clerk IS DIRECTED to enter judgment for Defendant

John E. Potter, Postmaster General, United States Postal Service, and against Plaintiff Belinda M. Travis.

IT IS SO ORDERED.

**Dated:    February 1, 2006              /s/ Sandra M. Snyder**
icido3                                    UNITED STATES MAGISTRATE JUDGE